Anderson, J.,
delivered the opinion of the court.
This is a hill in chancery by Amanda F. Walden, wife of Carnet M. Walden, hy Robert L. Menefee her next Mend, and Zeph. Turner, trustee of the said Amanda, against the said Carnet M. Walden and Patrick Linane and others, judgment creditors of the said Carnet M. Walden, and the sheriff of Rappahannock county, to restrain them from all further proceedings, upon the executions which had been sued out by the creditors upon .their several judgments, to subject the real and personal estate in the bill and proceedings mentioned, which the said Turner claims to hold in trust, for the said Amanda and others, free from the debts of her husband. The injunction ivas awarded hy the circuit court of Rappahannock county, and hy its final decree ivas perpetuated. And this appeal from said decree, is by Thomas R. Campbell, his assignee, who was made a defendant in the suit below, and by creditors of the said Carnet Walden.
The case turns upon the question, whether the property which the creditors of Carnet Walden seek to subject in this suit, and hy writs of fi. fa. and elegit, to the satisfaction of their judgments, was the property of said Carnet, and liable for his debts ? Other questions are raised hy the hill, as to whether it was competent for the judgment creditors, after they brought their hills in chancery, to set aside the deeds as fraudu *90 lent which vested said property in the said trustee-,. an(isubject it to the satisfaction of their judgments, whilst the said suits were still pending and undetermined, to sue out executions at law, and to have, 7 7 them levied on the same property to satisfy said judgments. But if the property in question was not the-property of the debtor, nor subject to his debts, it is decisive of the case, and the other questions need not be considered. We will proceed therefore now to inquire, was it the property of the debtor, and liable for his debts ?
The record shóws that it was the property of Lloyd D. Browning, the father of Amanda B. "Walden, in. his lifetime, and down to the period of his death, which occurred in 1865. After his death, a paper in writing,, purporting to be his last will, was offered for probate, in the county court of Rappahannock, by the said Caiv net M. Walden, who was named therein as his sole executor. The said instrument purported to devise and bequeath to the said Garnet and his wife Amanda, the whole of the decedent’s estate—-real and personal—charged with the payment of his debts, and legacies to his other descendants, amounting to $6,000. The probate, of said instrument as the will of the decedent, was contested by all his other descendants, who could take under said instrument, or who would, together with Amanda B. Walden, be entitled as heirs or distributees, if said instrument was not established to be the will of said decedent. The cause was transferred to the circuit court of said county, and upon an issue of devisavit vel non, tried in said court, the jury failed to agree, and no verdict was rendered. Subsequently, all the parties to said suit, entered into an agreement for the adjustment, and final settlement of all matters in controversy between them in respect to the estate of said decedent. And in the execution of *91 their said agreement, two deeds were executed—one bearing date the 26th of September, 1866, between Carnet M. "Walden and Amanda F. his wife, Thomas Deatherage and Margaret A. his wife, Samuel J. Spindle and Mary C. his wife, ITenry Lloyd Menefee, and A. F. Menefee, who undertook to act for and on behalf of Robert L. Menefee, and John W. Menefee, infants under the age of twenty-one years, of the one part, and Zeph. Turner of the other part: the other, between Carnet M. Walden and Amanda F. his wife, of the one part; and Zeph. Turner, of the other part—bearing date the 27th of September, 1866.
The first deed, after reciting the inducements thereto witnesseth, “that the parties of the first part, in consideration of the premises, and for the further consideration of one dollar, do convey to the said Zeph. Turner all of the real estate of the said Lloyd D. Browning, of which he died seized and possessed, or in any manner entitled to, except a portion, (which is described), and is the same which by the agreement and compromise, was to be conveyed to Mary C. Spindle and others, the children of Mary J. Menefee; and all the personal estate of said decedent, upon the following trusts; that is to say, for the use, benefit and enjoyment of the said Carnet M. Walden and Amanda F. his wife, for and during their joint lives, and for the sole use, benefit, and enjoyment of the survivor of them, with the right of possession during their joint lives, and to the survivor of them during his or her life; and upon the death of the survivor, the said trusts to cease and determine, and two-thirds of the said real estate to pass to the said Mary C. Spindle, Henry L., Robert L., and John "W. Menefee, and one-third thereof, to such issue of the said Amanda F. Walden, as she may leave surviving her, at the time of her death; but if the said Amanda F. should die without leaving such *92 issue, then the whole of said real estate to descend and pass in absolute property, to the said Mary C. Spindle, H. L. Menefee, Robert L. Menefeeand John W. Menean¿ as -¿q personal estate, whenever either the said Carnet M. Walden, or Amanda F. his wife, shall depart this life, then the trusts herein declared in respect of such personal estate, shall cease and determine, and the said personal estate pass to, and become the absolute property of the survivor of them.” The deed then conveys to the other parties the property which they were to have by the agreement and compromise.
The second deed, after reciting the disposition of his properly, made by the will of Lloyd L. Browning, the failure to probate it as the will of decedent, the amicable adjustment and compromise made by .the parties, and the deed of the 26th of September, 1866, just recited, and a promise made by Carnet M. Walden to Lloyd D. Browning before his death, that he would secure to the said Amanda F. Walden, his daughter, all the estate which he and the said Amanda F. should receive from him, witnesseth, that “for and in consideration of the promises, and of the said promise to Lloyd D. Browning, and the further consideration of one dollar, the said Carnet M. Walden and Amanda F. Walden, do hereby grant and convey to the said Zeph. Turner, all the estate, interest, and title, which they and each of them acquired under the said deed to the said Zeph. Turner, dated the 26th of September, 1866, to be held by the said Zeph. Turner in trust, for the joint lives of the said Carnet M. Walden and Amanda F. Walden, for the sole and separate use of the said Amgnda F. Walden, and not in any manner subject to, or liable for the debts, contracts, or engagements at present existing, or hereafter to be contracted, of the said Carnet M. Walden, except as to the said judgment *93 of the said 'Edward Lightfoot (with which the property conveyed to them by the deed of September the 26th is charged), and upon the death of either the said Carnet M. or Amanda E. "Walden, to hold the said real estate according to the terms and conditions of the said deed of 26th of September, 1866; and as to the personal estate this trust is to cease and determine, and the said personal estate is to become the absolute property of the survivor.”
The said deeds should he taken and read together, as parts of the same transaction. One is dated on the 26th of September, 1866, and the other on the following day, before the first was completely executed, and they were recorded on the same day. The latter refers to the former, and its recitals as inducements to its execution, are the same. The former conveys the property on trust, that it shall he held by the grantee, for the use and benefit of Carnet and Amanda Walden, with certain limitations, and they, the next day, before the first deed was perfected by full acknowledgment and delivery, united in conveying the interest which it proposed to vest in them, with the same limitations, to the same trustee for the sole and separate use of Amanda E. Walden, for and in consideration of the premises, in which the conveyance of the 26th of September, and the inducements thereto, are set out by way of recital. Can it he doubted that, when the conveyance was made, for the benefit of Carnet Walden and Amanda E. his wife, by the deed of September 26th, it was the understanding and agreement, that they would immediately unite in the second conveyance, with the declaration of trust therein contained? If so, both conveyances are parts of one and the same transaction, so far at least, as the parties to the second conveyance were concerned; and the first deed as to them, was merely the medium of transmitting to’ *94 Amanda F. Walden, the-beneficial interests with which she is invested, by the declarations of trusts in the second. In this view, there was no interest vested in Carnet Walden, which he could assert, and his judgment creditors were in no better condition. They could only claim what their debtor had a right to claim. And if the conveyance was made to him with the understanding that he would immediately settle it upon his wife, according to the declarations of trust as set out in the second deed, he would be estopped to set up any claim to it under the first deed.
But it will be perceived that these conclusions, are upon the assumption, that the transaction was bona fide and free from the taint of fraud. The answer of J. C. Gibson contains a general charge of fraud. There are no specifications of the grounds upon which fraud is charged; nor is any evidence adduced in support of the charge. There is nothing in the transaction itself which implies fraud. The property in question was not the property of the debtor at the time the debts were contracted, but was the property of Lloyd D. Browning. The judgment of Linane is for $550, with interest from the 18th of July, 1861, and $8.64 costs; and the judgment of Hisle is for $550, with interest on part from the 25th of May, 1854, and on the residue from the 1st of August, 1855. From which it is infer-able that the debts were contracted as early as 1861 and 1854—many years before the death of LloydD. Browning, and probably before the intermarriage of Carnet Walden with his daughter. They were not therefore contracted on the faith of the property in question. It never was the property of Carnet Walden; but was the property of Browning until his death, and was not liable in law or equity to the debts of Carnet Walden. It is alleged that it was devised and bequeathed by the will of Lloyd Browning jointly to Carnet Walden and *95 Amancla IT. Ms wife. But that is not established. It is true that there was a paper purporting to be the will •of said decedent, but it was never established to be his will. It was denied by the other descendants of the ■decedent that it was his will. It was offered for probate by Carnet "Walden as the will of decedent, wMch was contested, and an issue of devisavii vel non was ordered, and submitted to a jury, but the jury was unable to agree upon a verdict—and all the parties in interest then agreed to settle it amicably amongst themselves. And they did agree upon a settlement, as they had a right to do, which was not upon the basis of the supposed will, which was never admitted to probate. There was nothing in that compromise and settlement which implies fraud. The transaction seems to have been conducted by all the parties in good faith, and to have resulted from a desire to put an end to litigation, .and to family controversy, and to adjust their differences amicably, and on terms which the members of the family regarded as just and fair—and such settlements for the peace of families, courts of equity are disposed to uphold, rather than to overturn.
Nor can it be inferred that the settlement which Car-net Walden consented to make upon his wife, of the ■estate which she derived from her father, was fraudulent as to his creditors. It did them no wrong. They had no claim on that property. Their debts were not contracted on the faith of it. Carnet Walden sought to probate the alleged will, which gave it to him jointly with his wife; which bequest he says was made upon his promise to the testator, that he would settle it upon his wife. lie failed to establish it as the will of the decedent, and then consented to the determination of the litigation and a settlement upon terms which were acceptable to all the heirs, and distributees of the decedent. It was the wife’s equity, which the husband *96 settled on her. In Poindexter and wife v. Jeffries & als., 15 Gratt. 373, Judge Moncure, in whose opinion the other judges concurred, said, “The wife’s equity is so substantial an interest that it will constitute a valuable consideration for a post nuptial settlement by the husupon her (made while the equity exists), which wip be sustained against his creditors, to the extent of' the equity, by a court of chancery. The same circumstances which would induce the court (said the Y. C. ■ in Wickes v. Clarke, 8 Paige’s B. 166) to compel a settlement by the husband, or those claiming under him or in his right, will operate to uphold a deed of settlement already made, to the same extent that would be required if one should be directed to be made under the view of the court. See also the more recent case of White by, &c. v. Gouldin’s ex’ors & als., 27 Gratt. 491.
By the terms of the deed of the 27th of September,, 1867, Carnet Walden reserves a contingent right to the real estate for and during his life, if he should survive his wife, and to the whole of the personal property absolutely in that event, which would be subject to his debts, if the contingency shoxxld happen, Bixt it is said and I believe was conceded at the bar, that he has departed this life, and Amanda P. his wife survives him: the estate then vests in his wife who survives hixn. There is xio error ixx the decree of the circuit court, and the coxxrt is of opinion to affirm the same.
Decree aeeirmed.